Stacy Hernandez
43641 Nicole Street
Lancaster, California 93535
310 597-0721
PRO PER

# IN THE DISTRICT COURT UNITED STATES
# FOR THE DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACY ENID HERNANDEZ, | Case No.: CV12-02911 CAS(FFMx) |
| Plaintiff, | |
| vs. | **SECOND AMENDED FOR RECISSION AND DAMAGES** |
| RECONTRUST COMPANY, N.A. | **15 USC 1635, 12CFR § 226.23** |
| BANK OF AMERICA, N.A. | |
| MERSCORP | |
| Defendant(s) | |
| | **TRIAL BY JURY DEMANDED HEREIN** |

## JURISDICTION

At all times, the Plaintiff, Stacy Hernandez has resided in the County of Los Angeles, in the State of California. Defendant(s) do maintain statutory agents within the state of California for the purpose of doing business. Matters concerning Federal Law are at issue. The jurisdiction of this court is invoked pursuant to the Truth in Lending Act, 15 U.S.C. § 1635 and 28 U.S.C. §§ 1331 and 1337. Jurisdiction of this court for the pendent claims is authorized by Fed. R. Civ. P. 18(a).

## BACKGROUND

As this Honorable court is aware, this case arises from an attempt by Defendant(s) to foreclose on a property occupied by Plaintiff. Plaintiff offers this Honorable Court and Defendant(s) her sincere apologies for technical deficiencies in pleading as this is a new world for Plaintiff who is void of legal training or assistance of counsel and is making a best effort attempt by herself. By Law and precedent and in accordance with the Supreme Court of the United States *pro se* Pleadings MAY NOT be held to the same standard as a lawyer's and/or attorney's; and whose motions, pleadings and all papers may ONLY be judged by their function and never their form. *See:* Haines v. Kerner; Platsky v. CIA; Anastasoff v. United States; Litigants are to be held to less stringent pleading standards.

## QUESTION PRESENTED

Section 125 of the Truth in Lending Act (TILA or Act), 15 U.S.C. § 1601 *et seq.*, provides consumers a statutory right to rescind certain types of mortgage loans. This rescission right expires three days after consummation of the loan, unless a lender fails to provide the consumer with disclosures mandated by the Act. 15 U.S.C. § 1635(a). In that case, the right to rescind is extended until the lender provides the disclosures. *Id.* If the disclosures are never provided, the right to rescind expires three years after consummation of the loan or upon sale of the home, whichever occurs first. *Id.* § 1635(f). The consumer exercises the right to rescind "by notifying the creditor, in accordance with regulations of the [Consumer Financial Protection] Bureau, of his in-tention to do so." *Id.* § 1635(a).

This lawsuit is arising out of a consumer's exercise of the right to rescind under the Act: When a consumer timely exercises an allegedly valid right of rescission by providing notice to the lender within three years, but the lender does not recognize the rescission, must the consum-er also file a lawsuit against the lender within three years?

## INTEREST OF THE AMICUS CURIAE

This case presents a frequently litigated question regarding the interpretation of TILA and its implementing regulation, Regulation Z, 12 C.F.R. § 1026 *et seq.*, as they apply to the rescission of certain mortgage loans. Many courts incorrectly restrict con-sumers' rescission rights under TILA by concluding that consumers must both *exercise* their right of rescission—by providing notice to their lenders—within three years of the loan's consummation, and *sue* their lenders within that same three-year period to resolve any disputes that arise regarding the rescission. As a result, these courts have erroneously dismissed rescission lawsuits as untimely, leaving consumers unable to litigate their claims on the merits.

Congress granted the Consumer Financial Protection Bureau the authority to interpret and promulgate rules regarding TILA. *See* 12 U.S.C. §§ 5481(12)(O), 5512(b)(1), 5581(b)(1). With enactment of the Dodd-Frank Wall Street Reform and Consumer Protection Act, Congress transferred this authority from the Board of Governors of the Federal Reserve System to the Bureau on July 21, 2011. *See* Pub. L. No. 111-243, §§ 1061(b)(1), (d) (2010), *codified at* 12 U.S.C. §§ 5581(b)(1), (d); *Designat-ed Transfer Date*, 75 Fed. Reg. 57,252 (Sept. 20, 2010). Exercising this authority, the Bu-reau republished Regulation Z in December 2011. *See* 76 Fed. Reg. 79,768-01, 79,803 (Dec. 22, 2011) (codified at 12 C.F.R. § 1026 *et seq.*). The Bureau is now "the primary source for interpretation and application of truth-in-lending law," *Household Credit Servs. v. Pfennig*, 541 U.S. 232, 238 (2004), and thus has a substantial interest in this case.

In addition, at least ten other cases pending in four cir-cuits present the same question posed here. *See* Bureau Mot. for Leave to File Brief as *Amicus Curiae* at n.2 (Mar. 2, 2012) (listing cases). The Bureau has a substantial interest in ensuring the correct and consistent interpretation of TILA and Regulation Z on this important issue. Accordingly, the Bureau moved for leave to file an *amicus* brief in this case despite the fact that briefing was complete and oral argument had occurred on November 14, 2011. The Court granted the Bureau's request and instructed it to file a brief by March 26, 2012. The Bureau filed *amicus* briefs in at least three other appellate cases—in the Third, Fourth and Eighth Circuits—in which briefing is still pending. *See Sherzer v. Homestar Mortg. Servs.*, No. 11-4254 (3d Cir. dock-eted Dec. 16, 2011); *Wolf v. Fed. Nat'l Mortg. Ass'n*,

No. 11-2419 (4th Cir. docketed Dec. 23, 2011); *Sobieniak v. BAC Home Loans Servicing, LP*, No. 12-1053 (8th Cir. dock-eted Jan. 1, 2012).

## STATEMENT

**A. Statutory and Regulatory Background**

Congress enacted TILA in 1968 to establish a comprehensive scheme requiring lenders to disclose credit terms to consumers, with the aim of promoting the "in-formed use of credit." 15 U.S.C. § 1601(a). TILA requires lenders to provide "clear and accurate disclosures of terms dealing with things like finance charges, annual per-centage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). TILA entitles consumers to statutory and actual damages to remedy violations of its disclosure and other provisions. 15 U.S.C. § 1640.

Section 125 of the Act, 15 U.S.C. § 1635, also provides consumers a statutory right to rescind certain types of mortgage loans by giving timely notice to their lend-ers. Specifically, the right to rescind applies to open-end and closed-end loans secured by a lien on the consumer's principal dwelling (*e.g.*, home equity lines of credit, second mortgages, and refinances). *See generally* 12 C.F.R. §§ 1026.15, 1026.23. The right to re-scind does not apply to first mortgages. 15 U.S.C. § 1635(e)(1).

Congress enacted § 1635 in response to fraudulent home-improvement schemes in which "homeowners, particularly the poor," were "trick[ed] * * * into signing contracts at exorbitant rates, which turn out to be liens on the family residenc-es." 90 CONG. REC. H14388 (daily ed. May 22, 1968) (statement of Rep. Sullivan); *see id.* at H14384 (statement of Rep. Patman). Section 1635 combats this unfairness by requiring lenders to disclose the material terms of transactions, providing consumers an opportunity to reflect on those terms, and establishing a statutory right to cancel transactions should consumers have a change of heart. Section 1635(a) provides:

[T]he [consumer] shall have the right to rescind [qualifying mortgage loans] until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Bureau, of his intention to do so.

In operation, § 1635(a) grants consumers a three-day "cooling off" period to cancel their loans for any reason. But this period is meaningful only if consumers are aware of their rights and the material terms of their transactions. Thus, § 1635(a) extends the right of rescission until "the delivery of the information and rescission forms required under this section together with * * * the material disclosures required under this sub-chapter[.]"

In 1980, Congress amended § 1635 to establish a definite time period in which consumers who never receive the required disclosures must exercise their right to re-scind. *See* Pub. L. No. 96-221 § 612 (1980). Under that new provision, § 1635(f), Con-gress provided:

**Time limit for exercise of right**

[A consumer's] right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to [the consumer][.]

A consumer who wishes to rescind a loan must "notify[ ] the creditor, in ac-cordance with regulations of the Bureau, of his intention to do so" within the timeframe provided by § 1635(f). 15 U.S.C. § 1635(a). Regulation Z, in turn, specifies that "[t]o exercise the right to rescind, the consumer shall notify the creditor of the 6 rescission by mail, telegram or other means of written communication." 12 C.F.R. §§ 1026.15(a)(2), 1026.23(a)(2). The Bureau promulgated several model forms for this purpose. *See* 12 C.F.R. pt. 1026, App. H. Model form H-8(A), for example, provides (**SEE ATTACHMENT (A)**).

When the consumer exercises a valid right of rescission under § 1635(a), the transaction is cancelled. The effect of cancellation is governed by § 1635(b): The con-sumer "is not liable for any finance or other charge, and any security interest given by the obligor * * * becomes void upon such a rescission." 15 U.S.C. § 1635(b); 12 C.F.R. §§ 1026.15(d)(1), 1026.23(d)(1). Section 1635(b) also governs the process of cancellation: Within 20 calendar days after receipt of a notice of rescission, the lender must return any money or property given in connection with the transaction and take all necessary action to reflect the termination of the security interest. 15 U.S.C. § 1635(b); 12 C.F.R. §§ 1026.15(d)(2), 1026.23(d)(2). When the creditor has performed its obligations, the consumer must tender the money or property to the lender or, where the latter is impracticable or inequitable, tender the property's reasonable value. 15 U.S.C. § 1635(b); 12 C.F.R. §§ 1026.15(d)(3), 1026.23(d)(3). This statutory proce-dure may be modified by court order; 15 U.S.C. § 1635(b); 12 C.F.R. §§ 1026.15(d)(4), 1026.23(d)(4).

**B. Facts**

This case concerns Stacy Hernandez alleged rescission of her mortgage loan under § 1635. Hernandez entered into a loan with Countrywide Bank F.S.B. on November 13, 2007. For example, a court might modify these procedures when a consumer is in bank-ruptcy proceedings and prohibited from returning anything to the creditor, or when the equities otherwise dictate that modification is appropriate. 12 C.F.R. pt. 1026, supp. I, subpt. B at 15(d)(4). The Court must accept Hernandez's allegations as true. The Court takes no position on the merits of Hernandez's claims on the said loan, Countrywide Bank F.S.B. allegedly violated the Act's disclosure requirements by failing to noti-fy Hernandez of her right to rescind the loan, providing incomplete disclosures re-garding the adjustable interest rate, and inaccurately stating the total finance charges. *Id.* Countrywide Bank FSB, subsequently sold or assigned the loan to Bank of America. *Id.*

Hernandez sent a notice of rescission to Bank of America. *Id.* Bank of America did not respond. On _____, 2012, three years and one month after obtaining the loan, Hernandez is suing Bank of America in federal court, seeking an injunction to bar Bank of America and ReconTrust Company, N.A. from foreclosing on her home, a declaratory judgment that she had rescinded the loan, and damages. *Id.*

(quoting *Beach*, 523 U.S. at 417). To "hold otherwise," the court observed, would create "a lacuna between the expiration of the right to rescind and the time in which the lender might learn of a purportedly timely Rescission that it does not recall receiv-ing[.]"

Two appellate courts have addressed the same question. These courts have held that consumers, despite having timely exercised their right of rescission by providing notice to the lender, were also required to file a lawsuit within the time prescribed under § 1635(f). *See McOmie-Gray v. Bank of Am. Home Loans*, 667 F.3d 1325 (9th Cir. 2012) (petition for rehearing pending); *Williams v. Wells Fargo Home Mortg., Inc.*, 410 Fed. Appx. 495 (3d Cir. Feb. 8, 2011) (unpublished). In the district courts, there is a split. The majority view is consistent with the district court's holding in this case. *See, e.g., Geraghty v. BAC Home Loans Serv. LP*, No. 11-336,

2011 WL 3920248 (D. Minn. Sept. 7, 2011); *Bradford v. HSBC Mortg. Corp.*, 799 F. Supp. 2d 625 (E.D. Va. 2011); *DeCosta v. U.S. Bancorp*, No. 10-0301, 2010 WL 3824224 (D. Md. Sept. 27, 2010). The minority view holds that § 1635(f) only limits the time during which consumers must exercise their right of rescission by notifying the lender. *See, e.g., Barnes v. Chase Home Fin., LLC*, No. 11-cv-142, 2011 WL 4950111 (D. Or. Oct. 18, 2011); *In re Hunter*, 400 B.R. 651 (N.D. Ill. 2009); *Johnson v. Long Beach Mortg. Loan Trust*, 451 F. Supp. 2d 16 (D.D.C. 2006).

§ 1635(f) defines the time to notify the lender, and not the time to sue the lender, Hernandez is filing this complaint with the Court.

## SUMMARY OF ARGUMENT

Equitable tolling principles are to be read into every federal statute of limitations unless Congress expressly provides to the contrary in clear and ambiguous language, (See Rotella v. Wood, 528 U.S. 549,560-61, 120 S. Ct. 1075, 145 L. Ed. 2d 1047 (2000)). Since TILA does not evidence a contrary Congressional intent, its statute of limitations must be read to be subject to equitable tolling, particularly since the act is to be construed liberally in favor of consumers.

Section 1635 provides consumers a statutory right to rescind qualifying mort-gage loans when they do not receive the disclosures mandated by the Act, 15 U.S.C. § 1635. Under the plain terms of § 1635—and the Bureau's controlling interpretation of that provision—consumers exercise their rescission right by providing notice to their lender within three years of obtaining the loan. When a consumer has the right to rescind, timely notice to the lender effectuates the rescission as a matter of law; consumers need not go to court to unwind the loan. Requiring consumers to file suit within the three-year timeframe disregards the statutory and regulatory text, forces po-tentially unnecessary litigation on lenders, and wastes valuable judicial resources—all in contravention of the statutory scheme to provide a private, non-judicial mechanism to rescind mortgage loans.

The language of § 1635 is plain: Within three years of loan consummation, con-sumers must *exercise* their right of rescission by *notifying* their lender that they are doing so. If there were any ambiguity in that mandate, Regulation Z resolves it by also speci-fying that consumers exercise the right to rescind by providing written notice to the lender. Section 1635 and Regulation Z require no more. *See* pages 12-14.

Contrary to the reasoning of the district court, § 1635 in no way mandates that consumers also file suit to rescind within that three-year period. Rescission under TILA—like rescission in many other contexts—is a non-judicial mechanism, and is accomplished by notice, not a lawsuit. Litigation may ensue, but that litigation ad-dresses whether the consumer's rescission was valid under the Act, not whether the court should award rescission. Accordingly, it is the consumer's exercise of the right to rescind (by providing written notice to the lender) that must occur within the three-year period—not the filing of suit to confirm the validity of the rescission. *See* pages 14-19.

The Supreme Court's decision in *Beach v. Ocwen Federal Bank*, 523 U.S. 410 (1998), is not to the contrary. Even though *Beach* is not directly on point, courts have interpreted that decision to hold that § 1635(f) is a "statute of repose." That, they rea-son, *by definition* requires the filing of a lawsuit. But statutes of repose often are satis-fied by acts other than initiating litigation. Thus, even assuming § 1635(f) is a "statute of repose," it may be satisfied by providing notice to the lender. *See* pages 19-24.

Section 1635 should be interpreted consistent with its plain language and the Bureau's regulations to limit only the time for the consumer to exercise the right of rescission by notifying the lender,

not to limit the time in which a court may consider the validity of the consumer's previous exercise of that right.

## ARGUMENT

**Section 1635 Defines The Time For Consumers To Notify Their Lender, Not The Time For Consumers To Sue Their Lender.**
**A. Consumers exercise their right to rescind by notifying their lender within the three-year period provided by § 1635(f).**

Section 1635(f) defines the period of time during which consumers who do not receive the disclosures required under the Act are permitted to rescind their loan. It provides that the "right of rescission shall expire three years after the date of con-summation of the transaction or upon the sale of the property, whichever occurs first[.]" This language specifies *when* consumers must rescind, but it is silent on *how* they must do so. The answer to *how* consumers rescind is supplied by § 1635(a) and Regulation Z.

Section 1635(a) provides that the consumer "shall have the right to rescind * * * by notifying the creditor, in accordance with regulations of the Bureau, of her in-tention to do so." 15 U.S.C. § 1635(a). The Bureau has interpreted this provision con-sistent with its unambiguous meaning. Under Regulation Z, "[t]o exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication." 12 C.F.R. §§ 1026.15(a)(2), 1026.23(a)(2). Even if § 1635 were silent or ambiguous on this issue, "absent some obvious repug-nance to the statute, the * * * regulation implementing [TILA] should be accepted by the courts[.]" *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 219 (1981). Because the "complexity and variety" of credit transactions "defy exhaustive regulation by a single statute," Congress "delegated expansive authority" to the agency charged with imple-menting TILA "to elaborate and expand the legal framework governing commerce in credit." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559-60 (1980). Accordingly, "[u]nless demonstrably irrational," the Bureau's constructions of TILA "should be dispositive." *Id.* at 565.

The principle that consumers exercise the TILA right of rescission through no-tice is well established. As this Court recognized in *Rachback v. Cogswell*, 547 F.2d 502, 505 (10th Cir. 1976), "[s]ection 1635(a) requires only that the obligor exercise his right of rescission by notifying the creditor within the prescribed time limit of his intent to rescind." Every appellate decision of which we are aware that has considered this question has acknowledged the same. See *McOmie-Gray*, 667 F.3d at 1327 ("Regulation Z * * * confirms that notification is the means by which borrowers exercise their right to rescind."); *Jones v. Saxon Mortg., Inc.*, 537 F.3d 320, 325 (4th Cir. 1998) ("In order to exercise a right to rescind, a borrower must notify the creditor of the rescission by mail, telegram, or other means of written communication."); *Taylor v. Domestic Remodel-ing, Inc.*, 97 F.3d 96, 98 (5th Cir. 1996) (*per curiam*) ("In order to exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication."); *Williams v. Homestake Mortg. Co.*, 968 F.2d 1137, 1139 (11th Cir. 1992) ("Congress provided the consumer with the right to re-scind a credit transaction under § 1635(a) solely by notifying the creditor within set time limits of his intent to rescind.").

Reading subsections (a) and (f) together, § 1635 simply requires consumers to *exercise* their right of rescission by *notifying* their lender before the earlier of (1) three years following consummation of the loan or (2) sale of the home.

## B. Consumers are not required also to sue their lender within the three-year period provided under § 1635(f).

Although courts generally recognize that the right to rescind is exercised through notice, most courts, including the district court here, then wrongly conclude that consumers also must sue their lenders within three years of obtaining the loan. This view apparently rests on the erroneous assumption that, in a contested case, re-scission must be awarded by a court. Such an interpretation of the Act has no basis in the language of § 1635. These courts fail to understand that the statutory right of re-scission under TILA—consistent with rescission under the common law and many other statutes—is accomplished privately by notice. The consumer files suit not to ob-tain an award of rescission, but to have the court confirm the rescission, which the consumer already effectuated by providing timely notice to the lender.

Section 1635, like any statutory provision, must be interpreted in accordance with its "plain language." *Beach*, 523 U.S. at 416. No language anywhere in § 1635 re-quires consumers to file suit to exercise their rescission right. Certainly, the district court did not identify any. This is because "section 1635 is written with the goal of making the rescission process a private one, worked out between creditor and debtor without the intervention of the courts." *Belini v. Washington Mut. Bank, FA*, 412 F.3d 17, 25 (1st Cir. 2005). Thus, when a consumer has a right to rescind under § 1635 and "elects to rescind, the mechanics of rescission are uncomplicated." *McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 422 (1st Cir. 2007). Subsection (a) permits a consumer to "exercise[ ] her right to rescind" by "notifying the creditor" using "ap-propriate forms" provided "in accordance with regulations of the Bureau." Subsection (b) establishes that, within twenty days of receiving the notice of rescission, the lender must return "any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the se-curity interest." 12 C.F.R. §§ 1026.15(d)(2), 1026.23(d)(2). The consumer then tenders to the lender the loan principal. 12 C.F.R. §§ 1026.15(d)(3), 1026.23(d)(3).

The private, non-judicial rescission process reflected in § 1635 is in keeping with the historical understanding of how rescission operates in other contexts. "Re-scission is a fact, the assertion by one party to avoidable contract of his right (if such he had) to avoid it, and when the fact is made known to the other party, whether by a suit or in any other unequivocal way, the rescission is complete." *Cunningham v. Petti-grew*, 169 F. 335, 341 (8th Cir. 1909); *accord, e.g., Griggs v. E.I. DuPont de Nemours & Co.*, 385 F.3d 440, 445-56 (4th Cir. 2004) ("[R]escission itself is effected when the plaintiff gives notice to the defendant that the transaction has been avoided and tenders to the defendant the benefits received by the plaintiff under the contract."); *Goess v. A.D.H. Holding Corp.*, 85 F.2d 72, 74 (2d Cir. 1936) (explaining that a party "may exercise the power to avoid the transaction by giving notice of rescission, demanding the return of the consideration given, and offering to restore what he received" and that the rescis-sion right "becomes fixed as of that time"); *Johns v. Coffee*, 133 P. 4, 7 (Wash. 1913) (re-jecting argument that "the mere giving notice of rescission to the corporate officers is not in itself sufficient to accomplish a rescission"); Henry Campbell Black, *A Treatise On The Rescission Of Contracts And Cancellation Of Written Instruments*, Vol. 2, p. 1355, § 577 (1916) ("an overt act or outward manifestation" of the intent to rescind will ef-fect a rescission).

Of course, litigation may ensue after one party to a contract asserts a unilateral right to unwind that contract. The issue in these cases is not whether to grant rescis-sion, but rather whether rescission was *accomplished* because the party was entitled to rescind in the first instance. "[W]here one contracting party * * * served notice of re-scission on the latter, 'the rescission was complete and

perfect'" as of *the notice*, not the litigation. *Prewitt v. Sunnymead Orchard Co.*, 189 Cal. 723, 732 (1922) (quoting *Am. Type Founders' Co. v. Packer*, 130 Cal. 459, 467 (1900)); *accord, e.g., Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1322 (9th Cir. 1998) (holding that under California law, "[w]hen a party gives notice of rescission, it has effected the rescission, and any subsequent judi-cial proceedings are for the purpose of confirming and enforcing that rescission"); *Omlid v. Sweeney*, 484 N.W.2d 486, 490 & n.3 (N.D. 1992) (when a party "satisf[ies] the Section 1635(b) reflects "a reordering of common law rules governing rescission," in that it requires the lender to release the security interest before the consumer ten-ders. *Williams*, 968 F.2d at 1140. Section 1635(b) also allows a court to modify this de-fault procedure as necessary. Requirements of a unilateral rescission," "the contract no longer exists" and the suit "is essentially an action for restitution based upon [the] prior unilateral rescission"); *Jones v. Bohn*, 311 N.W.2d 211, 213 (S.D. 1981) (explaining that a plaintiff can sue "to enforce his rights arising from the rescission" that "has already been accomplished by [his] unilateral act"); *E.T.C. Corp. v. Title Guarantee & Trust Co.*, 271 N.Y. 124, 127-28 (1936) ("[I]n legal theory, the *ex parte* act of rescission reinvests [a party] with the legal title to the thing for the possession of which he subsequently sues."); *Wilcox Trux v. Rosenberger*, 195 N.W. 489, 490-91 (1923) (explaining that a rescission need not be awarded by the court, but rather that "[t]he rescission may be by the unaided act of the defrauded party"). Consistent with the rescission process in these other contexts, § 1635 entitles consumers to relief upon their exercise of a valid rescission right, which is accom-plished by notifying the lender. 15 U.S.C. § 1635(b) ("When an obligor exercises his/her right to rescind * * * he/she is not liable for any finance or other change, and any security interest given by the obligor * * * becomes void upon such a rescission."); *see also Wil-liams*, 968 F.2d at 1140 ("Under § 1635(b) * * * all that the consumer need do is notify the creditor of his/her intent to rescind. The agreement is then automatically rescind-ed[.]"). Notifying the lender either effects the rescission as a matter of law (because the consumer had the right to rescind and properly exercised it), or does nothing (be-cause the consumer did not have the right to rescind or improperly exercised it). Sec-tion 1635(f), in turn, establishes a definite period of time in which the consumer must deliver notice to the lender. When disputes arise, either the lender or the consumer may initiate litigation. If the court finds the consumer was entitled to rescind, it will order the procedures specified by § 1635(b) and Regulation Z, or modify them as the case requires. If the court finds the consumer was not entitled to rescind, the loan re-mains in place.

The district court's opinion reflects a misunderstanding of these concepts. The court held that "the right of Rescission must necessarily be coterminous with the limi-tation on the time for seeking a remedy of Rescission.". This logic assumes that, in a contested case, the consumer sues to obtain the remedy of rescission. That is incorrect. Even in a contested case, TILA rescission is accomplished by notice; it is not awarded by the court as a remedy. Thus, when con-sumers sue under § 1635, they are not asking the court to grant rescission**, but rather to confirm that rescission has been accomplished and to compel the lender to act ac-cordingly by**, *e.g.*, **releasing the security interest.** The timeliness of the consumer's law-suit is entirely independent of the timeliness of the consumer's exercise of the right to rescind. Accordingly, if the court finds the consumer rescinded the transaction (be-cause she properly exercised a valid right under § 1635), the lender must be ordered to honor the rescission, even if the underlying right to rescind has expired.

In any event, tethering the time in which consumers must initiate litigation to the length of the underlying rescission right would vitiate the statutory scheme estab-lished by Congress. Requiring consumers not only to notify their lender but also to file a lawsuit within three years would

incentivize consumers to file suit immediately, rather than working privately with the lender to unwind the transaction. It would also encourage lenders to stonewall in response to a notice of rescission, because if the consumer failed to file suit before the right expired, even a valid rescission would be-come a nullity. These consequences are inefficient for lenders, consumers, and the courts and contravene the purpose of § 1635 to make "[t]he rescission process * * * private, with the creditor and debtor working out the logistics of a given rescission." *McKenna*, 475 F.3d at 421; *accord Belini*, 412 F.3d at 25.

**C. *Beach* does not require consumers to file suit within the three-year period provided under § 1635(f).**

Relying on the Supreme Court's decision in *Beach v. Ocwen Federal Bank*, the dis-trict court characterized § 1635(f) as a "statute of repose" requiring that rescission claims be both noticed and sued upon within three years. Order at 8, 9. While § 1635(f) has features of a statute of repose, there is no general rule that a statute of repose can be satisfied only by filing a lawsuit, and *Beach* should not be read to require that result.

*Beach* involved a consumer who attempted to rescind a loan by raising rescis-sion "as an affirmative defense in a collection action brought by the lender more than three years after the consummation of the transaction." 523 U.S. at 411-12. The Court concluded that the language of § 1635(f) "takes us beyond any question whether it limits more than the time for bringing a suit, by governing the life of the underlying right as well." *Id.* at 417. Because section 1635(f) "completely extinguishes the right of rescission at the end of the three-year period," the consumer in *Beach* was not entitled to assert it for the first time as a defense to a foreclosure action. *Id.* at 411-12.

Although the term appears nowhere in the Supreme Court's opinion, the dis-trict court and numerous other courts have understood *Beach* to hold that § 1635(f) is a "statute of repose." Order at 10; *McOmie-Gray*, 667 F.3d at 1328-29; *Bradford*, 799 F. Supp. 2d at 630; *see also* HSBC Br. at 11. These decisions correctly perceive that § 1635(f) is much like a statute of repose, because it measures the time within which consumers must exercise their right to rescind from "a fixed date readily determinable by the [lender][.]" *Sterlin v. Biomune Sys.*, 154 F.3d 1191, 1196 n.9 (10th Cir. 1998). Time periods under § 1635 are measured from the date of the relevant credit transac-tion, rather than being measured from the (possibly indeterminate) date when con-sumers learn that they did not receive required disclosures, as with a typical statute of limitations. *Beach* thus acknowledges that the rescission right set out in § 1635 is "completely extinguishe[d]" if the consumer has not exercised her right to rescind within three years from the date of the credit transaction, even if the consumer does not learn that the lender failed to provide the required disclosures until after the three-year period has passed. 523 U.S. at 412. The Act "permits no federal right to rescind, defensively or otherwise, after the 3-year period of § 1635(f) has run." *Id.* at 419 (em-phasis added).

Even accepting the conclusion that *Beach* holds § 1635 to be a "statute of re-pose," numerous courts—including the district court here—have misunderstood the effect of that label. According to these courts, because § 1635(f) is a "statute of re-pose," it implicitly must require the filing of a lawsuit within three years. Order at 8-9; *Williams*, 410 Fed. Appx. at 499; *McOmie-Gray*, 667 F.3d at 1326; *Geraghty*, 2011 WL 3920248 at * 4. This logic is incorrect. *Beach* does not hold that lawsuits must be filed within the time provided under § 1635(f), and construing *Beach* to hold that § 1635(f) is a "statute of repose" does not require that result either.

There is no general rule that "statutes of repose" can be satisfied only by filing lawsuits. On the contrary, statutes of repose are frequently used to limit the time for taking other types of actions, such as filing notices or claims for benefits. **The Uniform Commercial Code**, for example,

contains a one-year "statute of repose pursuant to which a bank is not required to reimburse its customer" for an unauthorized wire transfer from the customer's account if the customer "did not object within one year of receiving notice of the account's debit." *Ma v. Merrill Lynch*, 597 F.3d 84, 88-89 (2d Cir. 2010) (discussing N.Y. UCC § 4-A-505). Other statutes that have been identified as "statutes of repose" require applicants for immigration relief or public benefits to submit applications within a defined period of time. *See, e.g., Balam-Chuc v. Mukasey*, 547 F.3d 1044, 1048-50 (9th Cir. 2008); *Iacono v. Office of Personnel Mgmt.*, 974 F.2d 1326, 1328 (Fed. Cir. 1992). These statutes provide repose by establishing a date certain for the applicants to invoke their right to relief by taking the act specified in statute.

Of course, applicants claiming relief under these statutes may resort to litiga-tion: The government might reject a claim for benefits as untimely, or a bank might refuse to refund a wire transfer by claiming its customer failed to give proper notice. *See, e.g., Regatos v. North Fork Bank*, 257 F. Supp. 2d 632, 642-45 (S.D.N.Y. 2003). But the statute of repose in such a case defines the time for taking the act specified in the statute, not the time for filing any ensuing litigation. *See Zengen, Inc. v. Comerica Bank*, 158 P.3d 800, 811 (Cal. 2007) (explaining that a statute regarding unauthorized wire transfers was "not a statute of limitation but merely a statute of repose. It requires the customer only to notify the bank of the claim, not actually to commence the action.") (citation omitted); *Grabowski v. Bank of Boston*, 997 F. Supp. 111, 119 (D. Mass. 1997) (explaining that a similar provision was "in the nature of a statute of repose" and "does not create a statute of limitations on the time allowed to bring suit under [the statute]. Instead, it creates a one year notice requirement.") (citation omitted).

When Congress intends to use a statute of repose to define the period of time for filing lawsuits, it does so unambiguously. The Securities Exchange Act of 1934, for example, refers expressly to litigation in providing a "3-year period of repose": "*No action shall be maintained* to enforce any liability created under this section unless brought within one year after the discovery of the facts constituting the cause of ac-tion and within three years after such cause of action accrued." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 360 & n.6 (1991) (quoting 15 U.S.C. § 78i(e)) (emphasis added). The General Aviation Revitalization Act of 1994 similarly provides an "eighteen-year statute of repose" that forbids "*civil action[s] for damages* * * * after the applicable limitation period[.]" *Blazevska v. Raytheon Aircraft Co.*, 522 F.3d 948, 950-51 (9th Cir. 2008) (quoting Pub. L. No. 103-298, 108 Stat. 1552, § 2(a)) (emphasis added). Likewise, "[s]ection 413 of ERISA is a statute of repose" providing that "[*n*]*o action may be commenced*" six years from the date of an alleged breach of fidu-ciary duty. *Radford v. Gen. Dynamics Corp.*, 151 F.3d 396, 399-400 (5th Cir. 1998) (quot-ing 29 U.S.C. § 1113) (emphasis added). The lack of comparable language in § 1635(f) is further evidence that this section should not be interpreted to require the filing of a lawsuit. *See Atl. Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 129 S. Ct. 2561, 2570 (2009); *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 106 (1987).

The understanding that a statute of repose may be satisfied through notification rather than litigation does not introduce "a lacuna between the expiration of the right to rescind and the time in which the lender might learn of a purportedly timely Rescis-sion that it does not recall receiving." Nor does it leave the lender's securi-ty interest subject to stale attacks. *Id.*; *see also* HSBC Br. at 17-18; 21. TILA provides repose by requiring the consumer to notify the lender of her rescission within the specified time period. *See* 15 U.S.C. § 1635(a). By definition, the lender is on notice of the consumer's rescission. If the lender contests the rescission, litigation will ensue: Either the lender will refuse to unwind the transaction (and the consumer will sue), or

the consumer will stop paying (and the bank will sue or attempt to foreclose). Chal-lenges to the validity of the rescission will be litigated at that time.

Indeed, a similar sequence of events was alleged to have unfolded in the pro-ceedings below. On _JUNE 27_, 2012, Hernandez sent a notice of rescission to Bank of America, which failed to respond. Bank of America and ReconTrust Company N.A. initiated foreclosure proceedings, and Hernandez filed suit in the district court to require Bank of America to recognize the rescission; that proceeding provides a forum to litigate the validity of Hernandez's rescission before any foreclosure sale of the home to a third party.

* * * In sum, § 1635 is a straightforward provision that permits consumers who do not receive the necessary disclosures to rescind qualifying mortgage loans by notifying their lender within three years of obtaining the loan. This Court should reject a construction of § 1635 that also would require consumers to file suit against their lenders within the same three-year timeframe: It is contrary to the plain language of the provi-sion and contravenes the purpose of the statutory scheme to provide consumers a private, non-judicial mechanism to rescind mortgage loans.

The fact that § 1635 does not expressly limit the time period for litigation does not mean no limit exists. Some courts have concluded that TILA's general one-year stat-ute of limitations, 15 U.S.C. § 1640, permits consumers to bring suit to compel com-pliance with their rescission within one year of the lender's refusal to unwind the transaction after receiving the notice of rescission. *See, e.g., In re Hunter*, 400 B.R. at 660-61 (N.D. Ill. 2009); *Barnes*, 2011 WL 4950111. There is some support for this ap-proach in the legislative history. *See* S. REP. NO. 96-368, at 32 (1979), *reprinted in* 1980 U.S.C.C.A.N. 236, 268. Other courts have criticized application of § 1640 to rescission under § 1635. *See, e.g., McOmie*, 667 F.3d at 1327-28; *Bradford*, 799 F. Supp. 2d at 632-33. If § 1640 does not apply, courts may apply well-established borrowing doctrines to find an analogous statute of limitations. *See, e.g., Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 414-15 (2005); *Bowdry v. United Air Lines*, 956 F.2d 999, 1004-05 (10th Cir. 1992).

## PRAYER FOR RELIEF

WHEREFORE, For the reasons set forth Plaintiff;

Seeks a declaration that the title to the subject property is vested in Plaintiff alone and that Defendant(s) herein and each of them, be declared to have no estate, right, title or interest in the subject property and that said Defendant(s) each of them, be forever enjoined from asserting any estate, right, title or interest in the subject property adverse to Plaintiff herein.

Seeks an order compelling said Defendant(s) and each of them to transfer legal title and possession of the subject property to Plaintiff herein.

A Declaratory judgment under this court's pendant jurisdiction that Plaintiff is granted compensatory and consequential damages, the sum of $500,000.00;

as punitive damages, the sum of $500,000,00;

the cost and disbursements of this action;

all attorney's fees incurred in prosecuting this action pursuant to 15 U.S.C § 1635(b);

the right to amend this complaint as needed;

such other and further relief as to the court seems proper.

1  I, Stacy Hernandez, certify under penalty of perjury that the foregoing is true and correct and not
2  to mislead to the best of my knowledge.
3  Dated: 9/18/12                                By: /s/ Stacy Hernandez
4                                                 Stacy Hernandez

# ATTACHMENT

# "A"

### H–8(A) Rescission Model Form (General)
### Your Right to Cancel This Loan

| You Could Lose Your Home | You are giving us the right to take your home if you do not repay the money you owe under this loan. |
|---|---|
| Your Right to Cancel | You have the right under federal law to cancel this loan on or before the date stated below. Under federal law, we cannot make any funds available to you until after this date. |
| If You Cancel | If you cancel, we will:<br>• Not charge you a cancellation fee; and<br>• Refund to you any fees you paid to get this loan. |
| How to Cancel | To cancel, you may submit the bottom portion of this notice to _____ at _____ [or<br>_____ or<br>_____ ]. |
| Deadline to Cancel | If you want to cancel this loan, you must submit the bottom portion of this notice on or before _____, _____.*<br>*In certain circumstances, your right to cancel this loan may extend beyond this date. In that case, you must submit the bottom portion of this notice to either the current owner of your loan or the person to whom you send payments. |

[If two or more people have the right to cancel this loan, cancellation by one person is effective for all of them.]

[*Initial here* _____ *to acknowledge receipt of this notice on* _____.]

[      (initials)                  (date)]

cut here → - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**I AM CANCELLING THIS LOAN.**

_____
Name

_____
Property Address
[12345678                       ]
[Loan Number]

14